## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSLYN WILKINS,** | : CIVIL ACTION NO. 03- |
| **Individually and as Administratrix of the** | : **JURY TRIAL DEMANDED** |
| **Estate of Nizah Morris, aka Robert Morris** | : |
| **Plaintiff** | : |
| | : |
| **V.** | : |
| | : |
| **CITY OF PHILADELPHIA,** | : |
| **OFFICER ELIZABETH SKALA,** | : |
| **Badge No. 2409, and** | : |
| **OFFICER JOHN DOE(S),** | : |
| **Individually and as police officers for** | : |
| **the Philadelphia Police Department;** | : |
| **TERESA HEIGHT and** | : |
| **STEPHEN McCARTHY,** | : |
| **Individually and as Emergency Medical** | : |
| **Technicians for the City of Philadelphia** | : |
| c/o Law Department | : |
| 1515 Arch Street | : |
| Philadelphia, PA 19102 | : |
| | : |
| **KEY WEST BAR AND GRILLE,** | : |
| **BANWICKMEN OF KEY WEST, INC.,** | : |
| **GREGORY M. WINN,** | : |
| **RANDY D. HICKMAN,** | : |
| **PHILLIP W. BANGERTER,** | : |
| **JOSEPH FOLEY,** | : |
| **CHUCK PORTEOUS and** | : |
| **CHARLES T. WINN** | : |
| c/o 207-209 South Juniper Street | : |
| Philadelphia, PA | : |
| **Defendants** | |

## COMPLAINT
### Introduction

1.  In the early morning hours of December 22, 2002, Nizah Morris, a transgender resident of

Philadelphia, left the Key West Bar and Grille in Center City in an extremely intoxicated state.

As she was unable to walk and appeared quite ill, an ambulance was summoned.  Philadelphia

police officer Skala arrived on the scene, called off the ambulance, and drove Ms. Morris to the vicinity of 15th and Walnut Streets where, minutes later, Ms. Morris was fatally wounded.  Nizah Morris was thereafter denied needed medical attention by paramedics for the City of Philadelphia.  The death of Nizah Morris was caused by:

a) The actions of police officer(s) which placed her in danger of death or serious bodily injury;

b) The failure of paramedics to provide needed medical care and attention and the conduct of paramedics and police officer(s) which delayed the administration of medical care and attention;

c) The City's failure to properly train, supervise, investigate and discipline its employees;

d) The practice and custom of Philadelphia police officers to transport intoxicated persons to locations other than medical facilities;

e) The disparate and unequal treatment of transgender citizens by City employees; and

f)  The agents and employees of the Key West Bar and Grille who, knowing that Ms. Morris was visibly intoxicated, continued to serve her alcoholic beverages.

2.  The conduct of the defendant officer(s) and paramedics violated the Fourth Amendment, the due process and equal protection provisions of the Fourteenth Amendment of the United States Constitution, and the laws and Constitution of the Commonwealth of Pennsylvania.  As a result of their deliberate indifference, recklessness and negligence, and their willful disregard of the safety of Nizah Morris, all Defendants, jointly and severally, caused her death and are liable for compensatory and punitive damages.

### JURISDICTION

3.  This action is brought pursuant to 42 U.S.C. §§1983, 1986 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws and Constitution

of the Commonwealth of Pennsylvania to redress Plaintiff's rights, privileges and immunities. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a).

## PARTIES

4. Plaintiff Roslyn Wilkins is a resident of the Eastern District of Pennsylvania who at all times relevant to this action resided in Philadelphia, Pennsylvania. She is the natural mother of Nizah Morris (the "plaintiff's decedent") and was appointed Administratrix of the Estate of Nizah Morris, aka Robert Morris by the Register of Wills of Philadelphia County, No. A 0896-03. She brings this civil action individually and as Administratrix of the Estate of Nizah Morris.

5. Prior to her death, Nizah Morris was a forty-seven year-old African-American transgender resident of the Eastern District of Pennsylvania who at all times relevant to this action resided at 5023 Walnut Street, Philadelphia, Pennsylvania.

6. Defendant Elizabeth Skala was at all relevant times an officer of the Philadelphia Police Department. She is being sued in her individual capacity as a Philadelphia police officer.

7. Defendant John Doe(s) was at all relevant times an officer(s) of the Philadelphia Police Department. They are being sued in their individual capacities as Philadelphia police officer(s).

8. Defendants Teresa Height and Stephen McCarthy were at all relevant times emergency medical technicians for the Fire Department of the City of Philadelphia. They are being sued in their individual capacities as employees of the City of Philadelphia.

9. Defendant City of Philadelphia is a municipal corporation within the Commonwealth of Pennsylvania which owns, operates, manages, directs and controls the Philadelphia Police Department and the Philadelphia Fire Department which at all relevant times employed

Defendants Skala, Doe(s), Height and McCarthy as police officers and emergency medical technicians.

10.  Defendant Key West Bar and Grille, 207 South Juniper Street, Philadelphia, PA, is an establishment licensed to sell alcoholic beverages to the public which at all times relevant to this action operated under the laws and regulations of the Commonwealth of Pennsylvania.

11.  Defendant Banwickmen of Key West, Incorporated, is a Pennsylvania corporation, which at all times relevant to this action owned, operated and maintained the premises at 207 South Juniper Street, Philadelphia, PA, which is the location of Key West Bar and Grille.

12.  Defendants Gregory M. Winn, Randy D. Hickman, Phillip W. Bangerter, Joseph Foley, Chuck Porteous and Charles T. Winn are individuals residing and/or doing business in the Eastern District of Pennsylvania.  At all times relevant to this action, each was a corporate officer and stockholder of Banwickmen of Key West, Inc. (doing business as Key West Bar and Grille) as follows: Gregory M. Winn (president, treasurer and director), Randy D. Hickman (vice president and director), Phillip W. Bangerter (secretary and director), Joseph Foley (director), Chuck Porteous (director) and Charles T. Winn (manager).  Banwickmen of Key West, Inc. was and is the holder of the Liquor License for Key West Bar and Grille.  These Defendants are being sued individually and as owners, officers, managers and operators of Banwickmen of Key West, Inc.  Hereinafter Defendants Key West Bar and Grille, Banwickmen of Key West, Inc., Gregory M. Winn, Randy D. Hickman, Phillip W. Bangerter, Joseph Foley, Chuck Porteous and Charles T. Winn will be referred to, collectively, as the "Key West Defendants."

13.  At all times relevant to this action, the Key West Defendants were acting individually and/or through their agents, servants and/or employees, all of whom were acting within the

4

course and scope of their employment and/or agency.

14.  All Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff as more fully set forth in this Complaint.

15.  At all times relevant to this action, Defendants Skala, Doe(s), Height and McCarthy were acting under color of state law.

## FACTUAL ALLEGATIONS

16.  Prior to 12:30 A.M. on December 22, 2002, Nizah Morris, the plaintiff's decedent, had been drinking to the point of visible intoxication.

17.  On December 22, 2002, at or about 12:30 A.M., Nizah Morris arrived at Key West Bar and Grille, 207 South Juniper Street in Philadelphia.

18.  When Ms. Morris arrived at Key West Bar and Grille, she was visibly intoxicated and already at or near a blood alcohol level of .10.

19.  After her arrival at Key West Bar and Grille, Ms. Morris, who was visibly intoxicated, ordered and was served alcoholic beverages by the agents, servants and employees of the Key West Defendants, who thereafter continued to serve her alcoholic beverages.

20.  At or about 3:00 A.M., Nizah Morris was permitted to leave Key West Bar and Grille by the agents, servants and employees of the Key West Defendants despite the fact that she was extremely intoxicated and already at or near a blood alcohol level of .40, a condition which presented a clear danger to the health and safety of Ms. Morris and others.

21.  While Nizah Morris was outside the Key West Bar and Grille, she was unable to stand, was barely conscious and appeared to be quite ill.  Neighborhood residents and others at the scene came to Ms. Morris' assistance and, recognizing her need for immediate medical attention,

5

called for an ambulance to take her to the hospital.

22.  The area outside of the Key West Bar and Grille, located at Juniper and Chancellor Streets in Philadelphia, is a mixed residential and commercial area which, at 3:00 A.M., has very little vehicular and pedestrian traffic.

23.  At about 3:10 A.M., Defendant Skala arrived at the area of Juniper and Chancellor Streets in a marked police vehicle.

24.  Without cause or justification, and despite the fact that Nizah Morris was in need of medical attention, Defendant Skala called off the ambulance that was on its way to the scene and placed Ms. Morris in a police vehicle.

25.  Defendant Skala drove Nizah Morris to the vicinity of 15th and Walnut Streets in Philadelphia.  That area, even at 3:20 A.M., has considerably more vehicular and pedestrian traffic than the area of Juniper and Chancellor Streets in Philadelphia.

26.  The transportation of Nizah Morris to the vicinity of 15th and Walnut Streets, and the cancellation of needed medical care and attention, increased the likelihood of harm and danger to Ms. Morris, who was highly intoxicated, ill and unable to care for herself.

27.  At that time, at or near 1500 block of Walnut Street, Defendant Skala caused Nizah Morris to be removed from her police vehicle.

28.  Defendant Skala's conduct was consistent with a policy, practice and/or custom of Philadelphia police officers, in disregard of the health and safety needs of intoxicated persons, to transport such persons to locations other than medical facilities.

29.  At that time and location, and due to her intoxicated state, Nizah Morris was unable to safely walk and presented an imminent danger to the health and safety of herself and others.

30.  At that time and location, Nizah Morris sustained serious physical injuries, including severe head trauma.

31.  Shortly thereafter, the police and an ambulance were called to the scene.

32.  Defendants Doe(s), Height and McCarthy arrived at the scene where Nizah Morris was found lying in the street with a severe head wound and other injuries.  She was bleeding profusely.

33.  Defendants Doe(s), Height and McCarthy failed to promptly transport Nizah Morris to the hospital even though the defendants knew or should have known that she was in need of immediate medical attention.  Instead, Defendants Doe(s), Height and McCarthy unreasonably kept her in their custody and control, delaying and preventing the administration of needed medical care and attention.

34.  Defendants Height and McCarthy failed to administer proper medical care and attention to Nizah Morris, administered improper medical care and attention to her, and delayed her transport to the hospital despite the fact that she had sustained a head wound of such a nature that Height and McCarthy knew or should have known that immediate medical attention at one of several nearby hospital emergency rooms was critically important to her health and survival.

35.  The conduct of Defendants Height and McCarthy was the result of a policy, practice and/or custom of City paramedics of failing to recognize, manage and treat the medical symptoms of patients who were or were believed to be intoxicated.

36.  The delay in transporting Nizah Morris to a nearby hospital for treatment prevented the administration of prompt medical care and attention which would have saved her life.

37.  Defendants Height and McCarthy failed to provide the medical providers at Jefferson

7

Hospital with information vital to the prompt and appropriate treatment of Nizah Morris, thus causing a critical delay in the administration of treatment to her.

38.  The treatment to which Nizah Morris was subjected by Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy was the result, at least in part, of the disparate and unequal treatment afforded members of the transgender community by City employees.

39.  Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy violated Nizah Morris's constitutional and statutory rights by: failing to protect her; increasing the danger to her; subjecting her to an unreasonable seizure; depriving her of property and liberty without due process and equal protection of the law; subjecting her to unreasonable force; causing her to be fatally injured; and denying her prompt and appropriate medical care and attention.

40.  The acts of all Defendants were committed intentionally, without legal justification, cautious regard or due care, and with such wanton and reckless disregard of the consequences as to show their conscious and deliberate indifference to the danger of harm and injury to Nizah Morris.

41.  Defendants Skala, Doe(s), Height and McCarthy and the Key West Defendants acted wilfully, deliberately, maliciously or with reckless disregard of Nizah Morris' constitutional and statutory rights.

42.  The conduct, actions, policies, practices and customs of all Defendants were the proximate cause of the death of Nizah Morris and of the injuries, pain and suffering that occurred prior to her death.

43.  As a direct and proximate result of all Defendants' actions, Nizah Morris experienced pain and suffering, fear, loss of liberty, confinement, physical injuries, mental anguish, loss of life,

and the loss of the enjoyment of life, all to her detriment and loss.

44.  As a direct and proximate cause of all Defendants' actions, Nizah Morris suffered loss of income, loss of earning power and earning potential, and deprivation of other liberty interests, all to her financial detriment and loss.

45.  As a direct and proximate result of all Defendants' conduct, actions, practices, and customs, Plaintiff suffered and continues to suffer emotional harms and was denied her rights of familial companionship, parenthood and care of her daughter, Nizah Morris.

46.  As a result of the death of Nizah Morris, Plaintiff has been deprived of the care, comfort, aid, affection, support, companionship, services, maintenance, and assistance of her daughter for the remainder of her life, all to her detriment and loss.

47.  By reason of Nizah Morris' injury and death, Plaintiff has sustained pecuniary loss, including expenses for the costs of decedent's medical, surgical, hospital and nursing bills, funeral and burial expenses, and the administration of the estate.

48.  By reason of the death of Nizah Morris, Plaintiff has sustained pecuniary loss, including contributions for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

49.  Nizah Morris and Roslyn Wilkins have not brought any other actions at law against Defendants for damages for the injuries which caused the death of Nizah Morris.

50.  Plaintiff brings this action individually and as Administratrix of the Estate of Nizah Morris under 42 U.S.C. §1983 and 42 Pa.C.S. §§ 8301 and 8302, and claims damages sustained by reason of the death of Nizah Morris.

COUNT I
FEDERAL CIVIL RIGHTS ACTION
Plaintiff v. Defendants Skala and Doe(s)

51.  Paragraphs 1 through 50 are incorporated by reference as though fully set forth.

52.  Defendants Skala and Doe(s) knew or should have known that cancelling the ambulance, transporting Nizah Morris to an area with increased vehicular and pedestrian traffic, and delaying or aborting medical attention placed Nizah Morris in danger and increased the risk to her health and safety.

53.  The actions and conduct of Defendants Skala and Doe(s) were shocking to the conscience and deliberately indifferent to the danger to Nizah Morris, the foreseeable victim of a deadly crime or injury.

54.  It was clearly established on December 22, 2002, that Philadelphia police officers, such as Defendants Skala and Doe(s), were without the right or privilege to cancel needed medical attention for a person in need of such care and attention, to transport a citizen into a place of greater danger than the location from which such a person was transported or, having responded to the call for assistance and taking control of Nizah Morris, to disregard the duty to protect citizens such as Ms. Morris.

55.  As a direct and proximate result of the actions and conduct of Defendants Skala and Doe(s), committed under color of state law, Nizah Morris was subjected to an unlawful seizure, and deprived of her right to be secure in her person and property and to due process and equal protection of the law.  Plaintiff seeks damages for the violation of Nizah Morris' rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

10

## COUNT II
## FEDERAL CIVIL RIGHTS ACTION
### Plaintiff v. Defendants Doe(s), Height and McCarthy

56.  Paragraphs 1 through 55 are incorporated by reference as though fully set forth.

57.  Defendants Doe(s), Height and McCarthy knew or should have known that the delay in providing medical attention and the administration of improper medical care and attention placed Nizah Morris in danger and increased the risk to her health and safety.

58.  The actions and conduct of Defendants Doe(s), Height and McCarthy were shocking to the conscience and deliberately indifferent to the danger to Nizah Morris, the foreseeable victim of a deadly crime or injury.

59.  It was clearly established on December 22, 2002, that Philadelphia police officers and emergency medical technicians, including Defendants Doe(s), Height and McCarthy, were without right or privilege to deny or delay needed medical attention for a person in need of such care and attention, or, having responded to the call for assistance and taking control of Nizah Morris, to disregard the duty to administer prompt and appropriate medical care and attention to citizens such as Ms. Morris.

60.  As a direct and proximate cause of the actions and conduct of Defendants Doe(s), Height and McCarthy, committed under color of state law, Nizah Morris was subjected to an unlawful seizure, and deprived of her right to be secure in her person and property, to prompt and appropriate medical care and attention, and to due process and equal protection of the law. Plaintiff seeks damages for the violation of Nizah Morris' rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

11

## COUNT III
## FEDERAL CIVIL RIGHTS ACTION
### Plaintiff v. Defendant City of Philadelphia

61.  Paragraphs 1 through 60 are incorporated by reference as though fully set forth.

62.  Defendant City of Philadelphia's policies, practices and customs, and its failure, with deliberate indifference to properly train, supervise, investigate and discipline its police officers, paramedics and employees, including Defendants Skala, Doe(s), Height and McCarthy, caused these defendants to violate Nizah Morris' rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

63.  Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

a)  the constitutional obligation not to increase the risk of harm when police officers and other City employees intervene in a situation where an individual is in danger;

b)  the responsibility of police officers and emergency medical technicians to provide, and/or not to interfere with the provision of, prompt and appropriate medical care and attention;

c)  the failure of police officers and paramedics to follow appropriate procedures regarding the treatment of intoxicated persons under such circumstances as presented herein;

d)  the disparate and unequal treatment to which members of the transgender community are subjected by City employees;

e) the failure of paramedics to recognize, manage and treat the medical symptoms of patients who were or were believed to be intoxicated; and

f)  the failure of the Philadelphia Police Department and Fire Department to maintain proper

records regarding the treatment of transgender persons and intoxicated persons under such circumstances as presented herein so that: (i) employees of the City of Philadelphia, including the defendant officers and paramedics in this case, can be properly trained, supervised, investigated and disciplined for conduct related to the performance of their duties; and (ii) Defendant City of Philadelphia can properly monitor the conduct and performance of their employees to assure compliance with the laws and Constitutions of the United States and the Commonwealth of Pennsylvania.

64.  Defendant City of Philadelphia has failed to properly sanction and discipline police officers and paramedics who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other police officers and paramedics, thereby causing and encouraging other City employees, including the defendant officers and paramedics in this case, to violate the rights of citizens such as Nizah Morris.

65.  As a direct and proximate result of the City's policies, practices and customs, and its failure, with deliberate indifference to properly train, supervise, investigate and discipline its police officers and paramedics, Nizah Morris was subjected to an unlawful seizure and was deprived of her rights to be secure in her person and property, to prompt and appropriate medical care and attention, and to due process and equal protection of the law.  Plaintiff seeks damages for the violation of Nizah Morris' rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

**COUNT IV**
**42 U.S.C. § 1983 - WRONGFUL DEATH**
**Plaintiff v. Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy**

66.  Paragraphs 1 through 65 are incorporated by reference as though fully set forth.

67.  As a result of the actions, conduct, policies, practices and customs of Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy, Nizah Morris sustained injuries which caused her death.  Plaintiff claims damages for the wrongful death of Nizah Morris and for the loss of her income, services, protection, care, assistance, companionship, comfort, guidance, counsel and advice, and for funeral and burial expenses and other damages as set forth above under the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983 and 42 Pa.C.S. §§8301 and 8302

**COUNT V**
**42 U.S.C. § 1983 - SURVIVAL ACTION**
**Plaintiff v. Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy**

68.  Paragraphs 1 through 67 are incorporated by reference as though fully set forth.

69.  As a result of the actions, conduct, policies, practices and customs of Defendants City of Philadelphia, Skala, Doe(s), Height and McCarthy, Nizah Morris was forced to endure great psychological and physical pain and suffering prior to her death.

70.  Nizah Morris filed no action at law during her lifetime and under the laws of the Commonwealth of Pennsylvania this action survives and may be asserted by her Estate.

71.  Plaintiff claims damages for the pain and suffering endured by Nizah Morris prior to her death under the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983 and 42 Pa.C.S. §§8301 and 8302.

14

**COUNT VI**
**SUPPLEMENTAL CLAIMS – STATE LAW**
**Plaintiff v. Defendants Skala, Doe(s), Height, McCarthy, and the Key West Defendants**

72.  Paragraphs 1 through 71 are incorporated by reference as though fully set forth.

73.  The intentional, reckless and willful actions of Defendants Skala, Doe(s), Height, McCarthy and the Key West Defendants, acting jointly and severally, constitute the following state law claims:

    a.      Wrongful death;

    b.      Survival action; and

    c.      Deprivation of life without due process and equal protection of the law under the Constitution and laws of the Commonwealth of Pennsylvania.

**COUNT VII**
**STATE LAW: VIOLATION OF DUTY TO PROTECT**
**Plaintiff v. Defendants Skala, Doe(s), Height and McCarthy**

74.  Paragraphs 1 through 73 are incorporated by reference as though fully set forth.

75.  Defendants Skala, Doe(s), Height and McCarthy intentionally, recklessly and wilfully failed to perform their duty to protect Nizah Morris, knowing or having reason to know that their conduct created an unreasonable and substantial risk of physical harm to Ms. Morris.

76.  The conduct of Defendants Skala, Doe(s), Height and McCarthy constituted wanton and willful misconduct.

77.  As a result of the conduct of Defendants Skala, Doe(s), Height and McCarthy, acting jointly and severally, Nizah Morris sustained injuries which caused her death and other damages as set forth above.

15

## COUNT VIII
## STATE LAW: RECKLESS DISREGARD OF SAFETY
### Plaintiff v. Defendants Skala, Doe(s), Height and McCarthy

78. Paragraphs 1 through 77 are incorporated by reference as though fully set forth.

79. Defendants Skala, Doe(s), Height and McCarthy intentionally, recklessly and wilfully disregarded the safety of Nizah Morris, knowing or having reason to know that their conduct created an unreasonable and substantial risk of physical harm to Ms. Morris.

80. The conduct of Defendants Skala, Doe(s), Height and McCarthy constituted wanton and willful misconduct.

81. The conduct of Defendants Skala, Doe(s), Height and McCarthy constituted the tort of reckless disregard of safety, §500, 2 Restatement of Torts, 2d.

82. As a result of the conduct of Defendants Skala, Doe(s), Height and McCarthy, acting jointly and severally, Nizah Morris sustained injuries which caused her death and other damages as set forth above.


## COUNT IX
## STATE LAW: INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Defendants Skala, Doe(s), Height, McCarthy and the Key West Defendants

83. Paragraphs 1 through 82 are incorporated by reference as though fully set forth.

84. By the above described extreme and outrageous conduct, Defendants Skala, Doe(s), Height, McCarthy, and the Key West Defendants, acting jointly and severally, negligently, intentionally or recklessly caused  Nizah Morris and Plaintiff to suffer severe emotional distress.

## COUNT X
## STATE LAW: NEGLIGENCE
**Plaintiff v. Defendants Skala, Doe(s), Height, McCarthy, and the Key West Defendants**

85.  Paragraphs 1 through 84 are incorporated herein by reference as though fully set forth.

86.  Defendants Skala, Doe(s), Height, McCarthy, and the Key West Defendants, acting jointly and severally, were negligent and reckless, and their negligence and recklessness were a proximate cause of the injuries and damages suffered by Plaintiff.

87.  Due to their gross or wilful negligence, Defendants Height and McCarthy failed to provide prompt medical care and attention that met the generally accepted standards of care of medical providers in the Commonwealth of Pennsylvania, causing the injuries and harms set forth above.


## COUNT XI
## STATE LAW: NEGLIGENCE, GROSS NEGLIGENCE & NEGLIGENCE *PER SE*
**Plaintiff v. Key West Defendants**

88.  Paragraphs 1 through 87 are incorporated by reference as though fully set forth.

89.  At all times relevant to this action, Nizah Morris was a business invitee on the Key West Defendants' premises and as such was owed the highest standard of care.

90.  At all times relevant to this action, all of the acts and omissions of the Key West Defendants were committed by the defendants individually and through their agents, servants, workers, and/or employees.

91.  At all times relevant to this action, the Key West Defendants' served Nizah Morris alcoholic beverages when they knew or should have known that Ms. Morris was visibly intoxicated.

92.  At all times relevant to this action, the Key West Defendants' were negligent, careless, and

reckless in the following manner:

a.   They served alcoholic beverages to Nizah Morris, an individual who was already visibly intoxicated or who became visibly intoxicated as a result of drinking those beverages and the defendants knew or should have known that serving those alcoholic beverages could result in injuries or harm to Nizah Morris or others;

b.   They failed to provide adequate security and safety to Nizah Morris;

c.   They failed to act promptly and efficiently in providing security and avoiding injury to Nizah Morris;

d.   They failed to properly screen individuals that they knew or should have known exhibited intoxicated conduct;

e.   They failed to properly monitor their patrons;

f.   They failed to properly instruct, train and teach their staff regarding serving intoxicating beverages to individuals already in an intoxicated state;

g.   They failed to provide emergency services to their patrons;

h.   They failed to take reasonable care for the safety of business patrons, including Nizah Morris;

i.   They were otherwise negligent in fact and at law; and

j.   They violated various state and local statutes, ordinance, rules and regulations, including but not limited to laws and regulations which specifically relate to serving alcoholic beverages to visibly intoxicated persons.

93.   The conduct of the Key West Defendants was the direct and proximate cause of the harms sustained by Nizah Morris and Plaintiff.

94.   The acts of the Key West Defendants alleged in the preceding paragraphs constitute the torts of negligence, gross negligence, and negligence *per se*, all to Plaintiff's detriment and loss.

95.   As a result of the conduct of the Key West Defendants, Nizah Morris and Plaintiff sustained injuries and damages as set forth above.

**WHEREFORE**, Plaintiff requests the following relief as to each cause and claim:

a.      Compensatory damages as to all Defendants;

b.      Wrongful Death and Survival damages as to all Defendants;

c.      Punitive damages as to Defendants Skala, Doe(s), Height, McCarthy and the Key West Defendants;

d.      Reasonable attorney fees and costs as to all Defendants; and

e.      Such other and further relief as appears reasonable and just.

f.       Plaintiff demands a jury trial as to each defendant, claim and cause of action.


_____                     _____
PAUL MESSING                                        LEONORE F. CARPENTER
JONATHAN FEINBERG                                   Center for Lesbian & Gay Civil Rights
Kairys, Rudovsky, Epstein & Messing                 1211 Chestnut Street
924 Cherry Street, Ste. 500                          Suite 605
Philadelphia, PA 19107                               Philadelphia, PA 19107
(215) 925-4400                                       (215) 731-1447
Counsel for Plaintiff                                Counsel for Plaintiff